1  Joseph Guy Maiorano, Esq. CSB# 113876
   EMERALD PLAZA
2  402 West Broadway, 27th Floor
   San Diego, CA 92101
3  (619) 230-1612 fax: (619) 230-1839

4

5  Attorney for Plaintiff & Cross-Defendant;
   DAMON ABNOS

6

7

8

9

FILED

2008 JAN 10  PM 2: 40

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

UNITED STATED DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  DAMON ABNOS, an individual
                  Plaintiff,
12
        vs.
13
   LEE HEJMANOWSKI, an individual;
14 SELTZER CAPLAN McMAHON
   VITEK, a Law Corporation, and DOES 1
15 to 10,

16
                  Defendants.
17

18

19  AND RELATED CROSS ACTION

20

21

22

23

24

25

26

27

28

CASE #  '08 CV 0058 DMS WMc

PETITION TO VACATE ARBITRATION
AWARD; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
HEREOF

1

## TABLE OF CONTENTS

2                                                                                                Page

3

4    JURISDICTION...................................................................................................1

5    STATEMENT OF CLAIM.....................................................................................1

6    STATEMENT OF RELIEF SOUGHT......................................................................1

7    BACKGROUND...................................................................................................1

8          Discussion Re: Excessive Fees.....................................................................2

9          Discussion Re: Wrongful Assertion of Lien [The Conversion Claim]................4

10        Discussion Re: Spoliation Claim/Damon Abnos' Claim for Negligence in the

11             Handling of the Spoliation Issue/Pertinent Established Facts........................5

12        Argument.......................................................................................................7

13   THE ARBITRATION.............................................................................................8

14   LEGAL ARGUMENT.............................................................................................9

15        The Applicable Standard.................................................................................9

16        The Arbitrator Exceeded Her Power and Her Award Must Be Vacated............9

17        The Arbitrator Manifestly Disregarded California's Rules of Professional

18             Conduct As They Pertain to Conflicts of Interest........................................11

19        The Arbitrators Ultimate Conclusion is "Completely Irrational" Given

20             Unrefuted Facts of Which the Arbitrator was Advised..............................11

21   CONCLUSION....................................................................................................12

22

23

24

25

26

27

28                                                  i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Postal Workers Union AFL-CIP v. U.S. Postal Serv.,*
    682 F.2d 1280 (9th Cir. 1982)...................................................................9, 10

*Freightliner, LLC v. Teamsters Local 305,*
    336 F. Supp. 2d 1118 (D. Or. 2004).......................................................9, 10

*Luong v. Circuit City Stores, Inc.,*
    368 F.3d 1109 (9 Cir. 2004)...................................................................9, 11

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.,*
    44 F.3d 826 (9th Cir. 1995)..........................................................................9

*Montes v. Shearson Lehman Brothers, Inc.,*
    128 F.3d 1456 (11th Cir. 1997)...................................................................10

*Schoenduve Corp. v. Lucent Technologies, Inc.,*
    442 F.3d 727 (9th Cir. 2006)................................................................9, 12

## STATE CASES

*Fletcher v. Davis,*
    33 C4th 61, 69, 14 CR3d 58, 64 (2004)........................................................5

## FEDERAL STATUTES

28 U.S.C. §§ 1332...........................................................................................1

Federal Arbitration Act...................................................................................9

## STATE STATUTES

California Rules of Professional Conduct § 3-300.................................4, 5, 11

ii

JURISDICTION

Jurisdiction is based upon diversity of citizenship. The plaintiff is a citizen of the State of Missouri. The defendants, individual and corporate, are citizens of the State of California. Defendant Seltzer, Caplan, McMahon and Vitek is a law corporation duly organized and existing under the laws of the State of California with its principal offices in the city of San Diego. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

STATEMENT OF THE CLAIM

Plaintiff and defendants participated in an American Arbitration Association binding arbitration regarding a dispute pertaining to attorney's fees and charges and attorney malpractice. Plaintiff seeks to vacate the arbitration award because there was evident partiality by the arbitrator, the arbitrator was guilty of misconduct in refusing to postpone the hearing or hear the evidence, or other misbehavior which violate the rights of the parties; and that the arbitrator exceeded her power.

STATEMENT OF RELIEF SOUGHT

Plaintiff seeks to have the entire award vacated and to have the matter arbitrated de novo or litigated in the District Court.

BACKGROUND

Damon Abnos retained Seltzer Caplan to represent him in his divorce. The main financial issue in the divorce concerned Damon's separate property and the ability to trace funds to prove the character of his separate property. Damon told his attorneys that he had all of his bank records and other documentation concerning many years of transactions in over 30 file boxes at his home in Peculiar, Missouri. Damon told Seltzer Caplan that he was on vacation in Hawaii for the few weeks and would return to Missouri to retrieve the boxes upon his return. The banking information contained in the boxes could not be obtained any longer due to the length of time which transpired from the dates of the transactions. The banks no longer had copies of any of the records.

While Damon was in Hawaii, his wife, without his knowledge or consent, instructed her

1

1  parents (who live in the area) to go to the home while Damon was away and remove all the

2  boxes.  Over 30 boxes were removed from the property and were never returned.  The

3  documents were destroyed.

4       Seltzer Caplan never brought a motion regarding the spoliation and caused Damon to

5  lose at least $500,000 in what would have been verifiable traced funds.  Seltzer Caplan never

6  even took the wife's deposition to confirm the break-in and absconding with the boxes.

7       When they were fired by Damon, Seltzer Caplan asserted an invalid and wrongful

8  charging lien against $85,000.00 which was being held in the wife's attorney's (and later in

9  Damon's new attorney's trust account).  The "lien" denied  Damon access to his money for close

10  to one year.

11       Seltzer Caplan also billed Damon for at least two motions which had no effect on the

12  action other than to pad the bills.  *In fact, Seltzer Caplan's own final billing statement*

13  *unilaterally reduced the bill. According to Seltzer Caplan's final bill, which was dated*

14  *11/18/04,  there was a write off in the amount of $59,779.04 which left a balance due in the*

15  *total amount of $16,417.27.*  It was not possible to determine which, if any, of the contested

16  billings were addressed by Seltzer Caplan as part of the write off.

17       In any event, there is no subsequent bill from Seltzer Caplan.

18       Accordingly, the plaintiff  claimed a credit of $28,423.41 against the stated balance due

19  of $16, 417.27 for a refund in the amount of $12,006.14 plus simple interest at the rate of 10%

20  per annum from December 1, 2004 in the amount of $3,974.03 for a total amount due to the

21  plaintiff on the billings only in the sum of $15,980.17.

22

23                                     **Discussion re: Excessive Fees**

24       An issue of fee churning (padding) arises with regard to the motions for Management and

25  Control of the Business and  Bi-furcation of the marital status as neither was especially helpful

26  or productive to  Mr. Abnos.

27       In the case of the motion for management and control, the motion was brought at a time

28  when the parties were in settlement negotiations and following the wife's withdrawal of her

2

1    motion for support. The motion was, in fact, counterproductive to settlement. What apparently

2    precipitated the motion was the wife's instruction to the parties' management company to send

3    her one-half of the monthly share of income ($16,000) to the wife directly instead of to the

4    parties' joint checking account, which had previously been the practice. In taking this action, the

5    wife effectively eliminated her need for support to be paid by Mr. Abnos. The copious pleadings

6    that were required to bring and maintain the motion were apparently the result of a knee-jerk

7    rather than a well-considered reaction.

8         Also, one has to question why Seltzer Caplan decided to set the matter for hearing on the

9    regular motion calendar when it was obvious that the issues were extremely complex and would

10   require more than the standard ten (10) minutes allotted to each side for argument. Seltzer

11   Caplan had to have known that this would create, if nothing else, a calendaring problem that

12   would consume more attorney time in the future. It was entirely appropriate (and foreseeable)

13   that the wife's attorney would request that the matter be rescheduled for a long cause hearing.

14        This request should have been routinely honored. Instead, the request was declined;

15   resulting in ex parte and regular court appearances, needless correspondence and additional

16   preparation time. Seltzer Caplan even asked for a pre-read by the court (which was refused due

17   to the excessive length of the pleadings). All this occurred for the stated reason that Seltzer

18   Caplan did not have Mr. Abnos' permission to grant a continuance. Perhaps Seltzer Caplan

19   should have informed Mr. Abnos of the costs, fees, expenses and overall effectiveness/viability/

20   necessity for the actions taken.

21        Then, when the hearing went forward in April, it was postponed *sua sponte* by the Court

22   as a long cause matter to July. Ultimately, the motion was denied for lack of sufficient showing

23   of Mr. Abnos' history of management and control.

24        As for the motion to bifurcate the status, this is usually not necessary unless the client

25   needed to terminate the marriage while property settlement negotiations continue; which was

26   not the case here. There was simply no reason to incur the time, fees and costs relating to the

27   motion to bifurcate.

28        The following figures were derived by reviewing each billing statement from 12/15/03

3

to 8/12/04. The figures reflect the combined total of attorneys Hejmanowski's and Bassett's time and paralegal time billed respectively at $320, $175, and $130/hour. Filing fees and costs *were not included* since these were not clearly indicated on the statements as being connected to the particular issue or motion. Also, fees for Attorney Papst de Leon were not included because her involvement appears to have been solely in regard to the custody and visitation issues. Additionally, consultation time for other firm attorneys whose involvement was not significant to the above issues were not included.

*(Note: The amount may be short due to a lack of reference to the subject matter after a certain point in the billing statements. Due to refusal to submit to any discovery, it was not possible to establish the basis for any of the fees and costs charged which were not clearly referenced in the written statements.)*

The excessive fees and costs related to these two matters are:

| | |
|---|---|
| Motion for Management and Control | $18,609.00 |
| Opposition to Continue OSC to Long Cause Calendar | 1,306.00 |
| Motion to Bifurcate | 2,166.00 |
| Total: | $22,081.00 |

### Discussion re: Wrongful Assertion of Lien

### [The Conversion Claim]

As par for the course, Seltzer Caplan asserted a bogus, improper, unauthorized charging lien against Damon's money being held in the trust account of ex-wife's attorney. The merit-less lien stopped Damon from being able to access over $85,000 and forced Damon to use credit cards at high interest to cover expenses and further caused him to suffer needless angst.

Seltzer Caplan's purported lien was invalid under CRPC 3-300 et seq., to wit:

**Rule 3-300. Avoiding Interests Adverse to a Client**    A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, *unless each of the following requirements has been satisfied:*

4

1     *(A) The transaction or acquisition and its terms are fair and reasonable to the client*

2 *and are fully disclosed and transmitted in writing to the client in a manner which should*

3 *reasonably have been understood by the client; and*

4     *(B) The client is advised in writing that the client may seek the advice of an*

5 *independent lawyer of the client's choice and is given a reasonable opportunity to seek that*

6 *advice; and*

7     *( C) The client thereafter consents in writing to the terms of the transaction or the*

8 *terms of the acquisition. (Emphasis added)*

9     Seltzer Caplan's retainer agreement falls short of this requirement and there is no

10 separate written memorandum or letter of any nature which would comply with the requirements

11 of CRCP 3-300. There was simply no basis to support Seltzer Caplan's assertion of a lien and

12 their wrongful assertion of the lien caused Mr. Abnos to sustain damages in the form of having

13 to pay higher interest rates on credit cards and loss of use of $85,000.00 and interest thereon at

14 the legal rate of 10% per annum. Additionally, an attorney's lien on client's recovery constitutes

15 an **"adverse interest":** An attorney's lien against a client's future recovery to secure hourly legal

16 fees (so-called "charging lien") is an "adverse interest" requiring compliance with CRPC 3–300,

17 even where the lien is created as part of the initial fee agreement. [_Fletcher v. Davis_ (2004) 33 C4th

18 61, 69, 14 CR3d 58, 64;  ]

19                 **Discussion re: Spoliation Claim**

20     **Damon Abnos' Claim for Negligence in the Handling of the Spoliation Issue**

21                   **Pertinent Established Facts**

22     1. Damon Abnos maintained all his pre and post marriage business and personal records

23 in file boxes at his home in Missouri.

24     2. The documents contained in the file boxes were necessary to establish Damon's claim

25 for reimbursement and/or apportionment regarding the distribution of the marital property assets.

26     3. Lori Abnos' parents removed all the file boxes from Damon's home without Damon's

27 consent.

28

4. Seltzer Caplan was made aware that the file boxes were taken by Lori Abnos' parents.

5. Damon Abnos was unable to examine any of the documents which were in the file boxes for over two months from the date they were taken. When he did examine the documents, he told Seltzer Caplan that all of his pre-marital documents were missing.

6. Seltzer Caplan knew that Lori Abnos did not have Damon's permission to remove the boxes.

7. Seltzer Caplan told Damon that his claims could not be proven in the absence of the now-missing documents.

8. Seltzer Caplan "considered" "addressing" the spoliation issue.

9. Seltzer Caplan failed to address the spoliation issue.

10. Seltzer Caplan knew in January that Lori Abnos had wrongfully taken and destroyed Damon's evidence. From January through the following October, Seltzer Caplan continued to represent Damon.

11. Seltzer Caplan never brought the spoliation issue to the Court's or Special Master's attention.

12. Seltzer Caplan could have brought a motion to estop Lori Abnos from arguing the characterization issue or to shift the burden of proof.

13. Seltzer Caplan never brought the motions.

14. Seltzer Caplan never deposed Lori or her parents.

15. The unavailability of the documents caused Damon to lose his claims to reimbursement and apportionment.

16. All of the post-marriage assets were obtained through the pre-marriage sources. The pre-marriage sources had a value in excess of $500,000.00. **(For purposes of this Arbitration, Damon is limiting his claim on this issue to $500,000.00.) (Damon's uncontroverted testimony as to the value of his pre-marital assets clearly established a value in excess of $500,000.00)**

17. Damon effectively lost the entire $500,000.00 in reimbursement and or apportionment due to his inability to provide the documents stolen by Lori Abnos and her

6

1  parents.

2                                     **Argument**

3        Seltzer Caplan should have immediately brought action based upon the spoliation of

4  evidence.  Among other things, the destruction of evidence is a misdemeanor in this state and a

5  violation of the initial orders restraining each party from harming the other or their property.

6        Seltzer Caplan should have emphasized the importance of the documents and the

7  uncontroverted fact that Lori Abnos directed her parents to break into Damon's home in

8  Missouri while Damon was in Hawaii and to take between 30-40 file boxes with all Damon's

9  records.

10        Seltzer Caplan should have immediately demanded return of all the boxes and should

11  have immediately taken steps to protect their client.  Instead, they sat back and did nothing to

12  address the spoliation.

13        If Seltzer Caplan had immediately presented the facts to the Court and sought an order to

14  immediately return the files and boxes, there is no doubt that such an order would have been

15  issued.

16        If Lori disobeyed the order, evidentiary sanctions would certainly have followed.

17        If Lori obeyed the order but Damon could then prove that all of his pre-marital

18  documents were destroyed, a motion to either estop Lori from arguing that issue or a motion to

19  shift the burden would just as certainly have been granted.

20        Once Damon's position relative to the establishment of the character of the assets and the

21  tracing was secure, a more appropriate settlement and distribution of the assets would likely have

22  followed.  In any event, Damon would have been entitled to claim the entire $500,000.00 which

23  Lori would then be unable to refute.

24        By failing to immediately take action relative to the spoliation, Seltzer Caplan sent a

25  clear message to Lori's attorney that they were unwilling to fight for Damon.  By failing to take

26  action immediately, Seltzer Caplan severely weakened Damon's argument as to the importance

27  of the documents and clearly hamstrung Damon on the settlement.

28

7

1   By coming to the arbitration and having their expert opine that such a motion can be

2   brought at any time; even at the time of trial, simply emphasizes the lackadaisical  attitude

3   Seltzer Caplan exhibited in the representation of their client. When Mr. Ludmer asked "Are we

4   going to hear about the goat camps?" Seltzer Caplan's attitude and message was loud and clear.

5   I guess people of Iranian descent are less entitled to justice than others.  I guess someone who

6   has been in a goat camp just isn't worth protecting or defending.  The slur was not just

7   inappropriate; it was telling.

8   Seltzer Caplan came to the arbitration and told the Arbitrator that Damon wanted them to

9   stop work but they didn't think he was serious so they went forward.  They told the Arbitrator

10   when Damon wanted Lori's deposition taken and action taken about the boxes, they didn't think

11   it would be conducive to settlement so they decided not to.  They billed thousands on motions

12   that were wastes of time and took no action on the most important property issue.  Essentially,

13   they paid little or no attention to Damon's concerns.  After all, he is just someone from a goat

14   camp.

15

16                                            THE ARBITRATION

17   Throughout the arbitration process, plaintiff was denied access to discovery and an equal

18   opportunity to present his case.  The arbitrator refused to honor plaintiff's requests for a brief

19   continuance to allow him to attend the arbitration hearing.  The arbitrator then *allowed* the

20   plaintiff an *opportunity* to appear **on a Sunday** to *present his side.*

21   When the plaintiff, a man of Iranian descent, was asked to briefly relate his history and

22   his personal efforts which formed the basis for his business successes, defense counsel asked

23   "Are we going to hear about the goat camp?".    Plaintiff was flabbergasted.  The arbitrator took

24   little apparent notice and allowed the matter to continue although plaintiff was clearly and

25   obviously distraught.  The vile and racist comment by defense counsel (an associate with the

26   defendant lawfirm) created an air of contempt over the entire proceeding.

27   The arbitrator then virtually ignored everything the plaintiff had to say.  The arbitrator

28   ignored the evidence and the billing statement provided by defendants themselves.  The

8

1   arbitrator even awarded interest on the full amount now claimed despite the plain and

2   uncontroverted admission by the defendant that the bill had been reduced to $16,471.27.

3   Additionally, the arbitrator refused to award any money to the plaintiff for the wrongful assertion

4   of the lien despite the fact that there was no defense. The arbitrator simply ruled that the

5   plaintiff didn't prove that he had access to the money at the time! This makes no sense.

6          The arbitrator awarded the defendants every dime they charged, even though the

7   defendants admitted that there were some double billings and even though defendants

8   specifically credited their own bill! This is just not rational.

9                                    **LEGAL ARGUMENT**

    **A.    The Applicable Standard**

10

11         Under the Federal Arbitration Act ("FAA), a court must vacate an arbitration

12  award where: (1) the award was procured by fraud, corruption, or other undue means; (2)

13  **there was evident partiality** or corruption by the arbitrators; (3) **the arbitrators were**

    **guilty of misconduct in refusing to postpone the hearing or hear the evidence**, or other

14

15  misbehavior which violate the rights of the parties; or (4) the arbitrators exceeded their

16  power or so imperfectly executed them that a mutual, final, and definite award was not

17  made. With respect to the final category, the Ninth Circuit has recognized that arbitrators

18  "exceed their power" if the award rendered is "completely irrational, or exhibits a

19  manifest disregard of the law." (*Schoenduve Corp, V. Lucent Technologies, Inc.,* 442 F.3d

20  727, 731 (9th Cir. 2006).) (Emphasis added)  Accordingly, an arbitration award should be

21  vacated on the grounds that it exhibits a manifest disregard of the law where it is "clear

22  from the record that the arbitrators recognized the applicable law and then ignored it."

23  (*Luong v. Circuit City Stores, Inc.,* 368 F.3d 1109, 1112 (9th Cir. 2004) (quoting *Mich.*

    *Mut. Ins. Co. v. Unigard Sec. Ins. Co.,* 44 F.3d 826, 832 (9th Cir. 1995).)

24

25      **The Arbitrator Exceeded Her Power And Her Award Must Be Vacated**

        Arbitrators are not empowered to ignore the law and dispense their own brand of

26

27  justice. (*American Postal Worders Union AFL-CIP v. U.S. Postal Serv.,* 682 F.2d 1280

    (9th Cir. 1982); *Freightliner, LLC v. Teamsters Local* 305, 336 F.Supp.2d 1118 (D. Or.

28

                                          9

1   2004); *Montes v. Shearson Lehman Brothers, Inc.,* 128 F3d 1456 (11th Cir. 1997).) This

2   arbitral maxim was lost on the Arbitrator here. Rather than apply established legal

3   principles of which she was well aware, the Arbitrator simply chose to ignore the law,

4   instead pronouncing and applying her own rule of equity. When arbitrators impermissibly

5   ignore established legal principles in favor of reaching what is, in their unique view, a

6   more equitable result, their awards are subject to being vacated. (*American Postal, supra,*

7   682 F.2d 1380 (9th Cir. 1982); *Freightliner, supra,* 336 F.Supp.2d 1118 (D. Or. 2004);

8   *Montrs, supra,* 128 F.3d 1456 (11th Cir. 1997).)

9        Regarding the unauthorized charging lien, there was uncontroverted evidence that

10  the lien was invalid and that the invalid lien tied up $85,000 of plaintiff's money for 11

11  months. The arbitrator simply ignored the law and refused to compensate the plaintiff for

12  the loss of use of the money.

13       Regarding the billings claimed; the Arbitrator ignored the clear admissions of fact

14  by the defendant that the last billing statement presented to the plaintiff was for

15  $16,417.27. Their own billing statement credited the plaintiff's account by $59,770.04

16  and the Arbitrator ignored this undisputed fact. The Arbitrator awarded over $76,000 in

17  fees and tacked on interest at 10% per annum from the date of the last bill. How could she

18  possibly allow a greater recovery than the billing statement? How could she possibly

19  allow interest on $76,000 when the billing statement itself carried a balance of

20  $16,417.27?   The award was clearly not based upon the law or the facts. The award

21  seems to have a lot more to do with where the plaintiff came from as opposed to the facts

22  and circumstances of the case. When the Arbitrator simply brushed off the "goat camps"

23  statement as no big deal, it became apparent that the plaintiff's words were to fall upon

24  deaf ears.

25       Although the defendant admitted to taking no action whatsoever concerning the

26  wife's destruction of the documents; even though they continued to represent the plaintiff

27  for more than 10 months thereafter, the Arbitrator's attitude was akin to "oh well". The

28  argument that some other lawyer could have argued the issue at some later date just does

1    not absolve the defendant from liability for failing to handle the issue as soon as it arose.

2    The delay by over 10 months in addressing the issue was devastating to the plaintiff. The

3    defendants admitted that the loss of the documents was a critical blow to the plaintiff's

4    chances; yet they did nothing about it! The Arbitrator inexplicably decided that since

5    some other attorney could have done it later on, the defendant was off the hook. The

6    Arbitrator, once again, ignored the law and completely disregarded the uncontroverted

7    evidence.

8          **The Arbitrator Manifestly Disregarded California's Rules of Professional**

9                     **Conduct As They Pertain To Conflicts of Interest**

10         The Arbitrator manifestly disregarded California law as it pertains to conflict

11   waivers. As licensed attorneys in California, defendants were supposed to be  aware of

12   California's Rules of  Professional Conduct ("CRPC") as they pertain to conflict waivers

13   specifically pertaining to charging liens.  It is undisputed that the defendants failed to

14   follow the rules and that the charging lien was invalid and the Arbitrator still did nothing

15   about it.       The Arbitrator's decision to ignore basic principles of law pertaining to

16   conflict waivers furnishes additional grounds for vacating the award. (*See Luong v.*

17   *Circuit City Stores, Inc.*, 368 F3.d 826, 832 (9th Cir. 1995) (An Award should be vacated

18   on the grounds that it exhibits a manifest disregard of the law where it is "clear from the

19   record that the arbitrator recognized the applicable law and then ignored it.").)

20        **The Arbitrators Ultimate Conclusion Is "Completely Irrational"**

21          **Given Unrefuted Facts Of  Which The Arbitrator  Was Advised**

22
          In addition to illogically adding $59,779.04 back into defendants' bill after
23
     defendants had admittedly credited the account and then awarding interest on the full
24
     $76,000; refusing to award interest to plaintiff for the loss of use of the money
25
     notwithstanding the clearly and undisputedly invalid lien which undisputedly tied up the
26
     money for 11 months; and letting the defendant off the hook on the spoliation issue
27
     **because someone else could have brought the motion more than one year after the**
28

                                         11

1  **fact** should be vacated on the ground that it is "completely irrational." (See *Schoenduve*

2  *Corp. v. Lucent Technologies, Inc.,* 442 F.3d 727, 731 (9th Cir. 2006) (An award must be

3  vacated if it is "completely irrational.").)

4

5                                        **CONCLUSION**

6        The Arbitration award should be vacated for the reasons set forth herein.

7

   DATED: January 8, 2008                    THE LAW OFFICES OF JOSEPH G. MAIORANO

8

9                                    By: _____

10                                        Joseph G. Maiorano
                                          Attorney for Damon Abnos

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AMERICAN ARBITRATION ASSOCIATION**
**COMMERCIAL ARBITRATION TRIBUNAL**

SELTZER CAPLAN McMAHON VITEK,
a Law Corporation,

    Claimant,

         and

DAMON ABNOS, an individual,

    Respondent.

DAMON ABNOS, an individual,

    Cross-Claimant,

         and

SELTZER CAPLAN McMAHON VITEK,
a Law Corporation,

    Cross-Respondent.

Re:  73 194 00076 07 LIAL

---

**AWARD OF ARBITRATOR**

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between and signed by Attorney Lee E. Hejmanowski on behalf of Claimant and Cross-Respondent Seltzer Caplan McMahon Vitek on November 19, 2003 and Respondent and Cross-Claimant Damon Abnos on November 27, 2003, and having been duly sworn and having duly heard the proofs and allegations of the Parties, and the arguments of counsel, hereby present this REASONED ARBITRATION AWARD as follows:

In the Agreement re Legal Services and Fees (hereafter "Retainer Agreement"), which contained the arbitration agreement referred to above, the law firm of Seltzer Caplan McMahon Vitek (hereafter "Law Firm") was retained to represent Damon Abnos in the underlying marital dissolution proceeding (In re the Marriage of Petitioner Lori Abnos and Respondent Damon Abnos, San Diego Superior Court Case No. D 480250.). Lee E. Hejmanowski was the Law Firm attorney who represented Mr. Abnos in the dissolution proceeding.

1

# BREACH OF CONTRACT

In the Retainer Agreement, Mr. Abnos agreed to pay Attorney Hejmanowski's hourly rate, and the hourly rates of the Law Firm personnel who worked on the dissolution action under his supervision, in addition to the costs advanced by the Law Firm. It also stated that he would be sent detailed monthly statements, which would be due and payable monthly, and any balance that was unpaid 45 days from the date of the statement would in incur a 10% "late fee" per annum.

Claimant Law Firm is suing Respondent Abnos for breach of contract for failure to pay $75,393.37 for legal services plus 10% interest per annum. The detailed billing statements were admitted into evidence. Mr. Abnos' last payment of $10,000 was reflected on the June 11, 2004 statement.

The billing statements support the Law Firm's position that Mr. Abnos failed to pay $75,393.37 in billed legal fees and reimbursable costs as of the last statement dated November 18, 2004. The last date of services was October 14, 2004. The interest on this amount at 10% per annum would be $7,539.34 for 2005, $8,293.27 for 2006 and $9,122.60 for 2007. The total amount of unpaid legal fees, reimbursable costs and interest at the end of 2007 was $100,348.58.

Mr. Abnos does not allege that the billing statements are inaccurate or that the hourly rates charged for the legal fees are excessive. He makes the following contentions:

1. On its' final bill, the Law Firm wrote off $59,779.04. Consequently, the balance due to the Law Firm is only $16,417.27, before interest. Mr. Abnos is mistaken. This "write off" was only the Law Firm's offer to compromise. Mr. Abnos did not accept this offer to compromise. Consequently, $59,779.04 has not been written off by the Law Firm and the full $75,393.37 is still due and owing.

2. The Law Firm should not have made the Motion for Exclusive Management and Control of the Family Business or the Motion to Bifurcate Status, both of which were contested, and he should not have to pay the legal fees ($19,727.00 and $3,999.00, respectively) for making these motions. He also alleges that the Law Firm should not have calendared the management and control motion on the regular motion calendar because it was obviously complex and should have been calendared for a long cause hearing. Consequently, he should not have to pay the $1,402.00 in legal fees incurred in moving the motion. An attorney has the legal authority to make tactical and procedural decisions when representing clients. Furthermore, Mr. Abnos did not object to the making of these motions and he actively participated in them. He wanted to be divorced as soon as possible from Lori Abnos and he wanted to have the exclusive management and control of the family business. There was no churning or excessive fee generation in the making of these motions and Mr. Abnos was appropriately billed for them.

3. The billing statements contained $3,013.50 in legal fees that were excessive or represented double billing. There was billing for a very modest amount of legal research and what Mr. Abnos calls "double billing," communication between attorneys and staff. An examination of the billing shows that it was reasonable

2

and necessary and should not be disallowed. Mr. Abnos was not overcharged for the legal services rendered.

Respondent Abnos breached his written contract with Claimant Law Firm when he failed to pay for all the legal services billed for representing him in the dissolution proceeding. Mr. Abnos owes Seltzer Caplan McMahon Vitek $100,348.58 plus 10% interest per annum from January 1, 2008 until paid in full.

The Law Firm's claim for quantum meruit for legal services rendered is moot.

## LEGAL MALPRACTICE

While Mr. Abnos was in Hawaii in January 2004, his wife's parents forcefully entered the Kansas City residence and removed banker boxes containing financial documents. When he examined copies of documents given to him by his wife's attorney, the contents of the two boxes in her attorney's office and the contents of a large number of boxes still in the residence, he claimed that a number of documents were missing because they had been removed and that these documents would have allowed him to trace his separate property contributions to real estate purchased during the marriage. He alleges that if there had not been spoliation of these financial documents, he would have been able to show that he had at least $500,000 in separate property interest in assets that were found to be community property in the dissolution.

Cross-Claimant Abnos contends that his attorneys committed legal malpractice by not taking any action to compel return of these documents, including depositions, or by not attempting to obtain court orders for discovery evidentiary or issue sanctions for failure to return the documents.

The Law Firm represented Mr. Abnos until he substituted them out as his attorneys in mid-October 2004. A Special Master was appointed by the Court to hear the separate property issues and submit a report to the Court. The Special Masters Report, which was adopted by the Court, was signed by the Special Master on April 26, 2006 and filed by the Court on July 25, 2006.

During the Law Firm's representation of Mr. Abnos after the alleged spoliation of evidence, the parties were engaged in settlement discussions. Mr. Abnos wanted to reach a settlement. Attorney Lee Hejmanowski thought that it would be harmful to the settlement discussions to aggressively pursue the return of any documents that might have been taken, including the taking of depositions. It should be noted that Mr. Abnos' wife denied removing any financial records from the boxes. The Special Master did not hold the hearing on the separate property issues and write his report until 1½ years after the Law Firm ceased representing Mr. Abnos. There was ample time for one of Mr. Abnos' subsequent attorneys to pursue the spoliation issue before the separate property issues were heard by the Special Master and after settlement discussions had ended.

Mr. Abnos has failed to establish that the Law Firm breached the duty of care. It is counterproductive and can be very damaging to engage in aggressive litigation tactics when the parties are engaged in settlement discussions. There was a long period of

time after settlement discussions had failed before the separate property issues were litigated when the spoliation issues could have been pursued. He has not sustained his burden of proof to establish that the Law Firm committed legal malpractice.

## CONVERSION

Cross-Claimant Damon Abnos contends that the Law Firm's assertion of a lien for their unpaid legal fees on his money in the trust account of one of his subsequent attorneys is conversion. The lien on the trust account funds was asserted for eleven months and the trust account funds were never actually transmitted to the Law Firm. He alleges his damages are 10% interest for eleven months on the $85,000 in the attorney's trust account ($7,790.67) because he lost the use of the money in the trust account because of the lien.

No evidence was presented that Mr. Abnos had the right to possess the funds in the attorney's trust account at the time of the alleged conversion. Furthermore, the Law Firm never had access to, use of or control over the funds. Consequently, there was no conversion.

Cross-Claimant Damon Abnos withdrew his claim for breach of fiduciary duty during the hearing.

## ARBITRATION AWARD

1.  Respondent Damon Abnos shall pay to Claimant Seltzer Caplan McMahon Vitek for breach of contract for failure to pay legal fees the sum of ONE HUNDRED THOUSAND THREE HUNDRED FORTY-EIGHT DOLLARS AND FIFTY-EIGHT CENTS ($100,348.58).
2.  Respondent shall also play to Claimant interest at the rate of 10% a year compounded annually from January 1, 2008 until the date this AWARD is satisfied.
3.  Claimant Seltzer Caplan McMahon Vitek's claim for quantum meruit is hereby denied.
4.  Cross-Claimant Damon Abnos' claims for Legal Malpractice and Conversion are hereby denied.
5.  The administrative filing and case service fees of the American Arbitration Association ("the Association"), totaling $11,050.00, shall be borne as incurred.
6.  The fees and expenses of the Arbitrator, totaling $11,545.57, shall be borne as incurred.
7.  Each party shall bear their own attorney's fees and costs

This ARBITRATION AWARD is in full settlement of all claims and counterclaims submitted to this arbitration. All claims not expressly granted herein are hereby, denied.

4

ARBITRATOR

**DATE:** December 26, 2007

5

**73-194-00076-07**
**Damon Abnos**

**Administrative Fees and Expenses:**

| | | |
|---|---|---|
| Filing Fees | $6,000.00 | |
| Case Services Fee | $2,500.00 | |
| Hearing Fees | $0.00 | |
| AAA Room Rental Fee | $0.00 | |
| Abeyance/Misc. AAA Fees | $0.00 | |
| Non-AAA Conference Room Expenses | $0.00 | |
| Misc Expenses | $0.00 | |
| Your Share of Administrative Fees and Expenses: | | $8,500.00 |
| Amount Paid for Administrative Fees and Expenses: | | $8,500.00 |
| Balance Administrative Fees and Expenses: | | $0.00 |

**Neutral Compensation and Expenses:**

| | |
|---|---|
| Your Share of Neutral Compensation and Expenses: | $6,126.45 |
| Amount Paid for Neutral Compensation and Expenses: | $8,300.00 |
| Balance Neutral Compensation and Expenses: | ($2,173.55) |

| | |
|---|---|
| **Party Balance:** | **($2,173.55)** |

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| | |
|---|---|
| **I. (a)   PLAINTIFFS**<br>DAMON ABNOS | FILED<br>**DEFENDANTS**<br>LEE HEJMANOWSKI, SELTZER CAPLAN McMAHON VITEK |
| **(b)** County of Residence of First Listed Plaintiff    Cass County, Missouri<br>(EXCEPT IN U.S. PLAINTIFF CASES) | 2008 JAN 10 PM 2:41<br>CLERK US DISTRICT COURT<br>SOUTHERN DISTRICT OF CALIFORNIA<br>County of Residence of First Listed Defendant   San Diego, California<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)<br>JOSEPH G. MAIORANO,  619-230-1612<br>402 W. BROADWAY, 27TH FL., SAN DIEGO, CA 92101 | BY ___ DEPUTY<br>**'08 CV 0058 DMS WMc**<br>Attorneys (If Known)<br>CHRISTOPHER LUDMER, SELTZER CAPLAN<br>750 B STREET, SAN DIEGO, CA 92101 |

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) |
|---|---|

| | | | | | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ 1 | U.S. Government<br>Plaintiff | ☒ 3 | Federal Question<br>(U.S. Government Not a Party) | | Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| ☐ 2 | U.S. Government<br>Defendant | ☒ 4 | Diversity<br>(Indicate Citizenship of Parties in Item III) | | Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| | | | | | Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>   & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>   Student Loans<br>   (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>   of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>   Liability<br>☐ 320 Assault, Libel &<br>   Slander<br>☐ 330 Federal Employers'<br>   Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>   Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>   Product Liability<br>☐ 360 Other Personal<br>   Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury -<br>   Med. Malpractice<br>☐ 365 Personal Injury -<br>   Product Liability<br>☐ 368 Asbestos Personal<br>   Injury Product<br>   Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>   Property Damage<br>☐ 385 Property Damage<br>   Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure<br>   of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational<br>   Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards<br>   Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting<br>   & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc.<br>   Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>   28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>   or Defendant)<br>☐ 871 IRS—Third Party<br>   26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>   Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>   Exchange<br>☐ 875 Customer Challenge<br>   12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information<br>   Act<br>☐ 900Appeal of Fee Determination<br>   Under Equal Access<br>   to Justice<br>☐ 950 Constitutionality of<br>   State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>   Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities -<br>   Employment<br>☐ 446 Amer. w/Disabilities -<br>   Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate<br>   Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | | |

**V.  ORIGIN**   (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original<br>Proceeding | ☐ 2 Removed from<br>State Court | ☐ 3 Remanded from<br>Appellate Court | ☐ 4 Reinstated or<br>Reopened | ☐ 5 Transferred from<br>another district<br>(specify) | ☐ 6 Multidistrict<br>Litigation | ☐ 7 Appeal to District<br>Judge from<br>Magistrate<br>Judgment |

**VI.  CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Petition to vacate a $76,000 arbitration award under the Federal Arbitration Act.  Petitioner is not a citizen of
Brief description of cause:
California.  Defendant is a citizen of California.

| **VII.  REQUESTED IN<br>COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION<br>UNDER F.R.C.P. 23 | **DEMAND $** | CHECK YES only if demanded in complaint:<br>**JURY DEMAND:**   ☐ Yes   ☒ No |
|---|---|---|---|

| **VIII.  RELATED CASE(S)<br>IF ANY** | (See instructions): | JUDGE | | DOCKET NUMBER | |
|---|---|---|---|---|---|

| DATE  1/10/08 | SIGNATURE OF ATTORNEY OF RECORD  /s/ Maiorano |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT #  146300     AMOUNT  $350   1/10/08  B41     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

## # 146300    — BH

## January 10, 2008
## 14:43:32

### Civ Fil Non-Pris
USAO #.: 08CV0058 CIVIL FILING
Judge..: DANA M SABRAW
Amount.:                    $350.00 CK
Check#.: BC# 21301

## Total-> $350.00

FROM: ABNOS V. HEJMANOWSKI ET AL
      CIVIL FILING